# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALONZO COLEMAN AND<br>DIANE COLEMAN | CIVIL ACTION |
| VERSUS | NO. 14-00186-SDD-SCR |
| EAST BATON ROUGE PARISH<br>SHERIFF'S OFFICE, SID J. GAUTREAUX III,<br>IN HIS OFFICIAL CAPACITY AS SHERIFF<br>OF EAST BATON ROUGE PARISH, AND IN<br>HIS INDIVIDUAL CAPACITY, AND CRYSTAL<br>QUIETT, COMMANDER OF EAST<br>BATON ROUGE PARISH SHERIFF'S OFFICE<br>COMMUNICATIONS DIVISION, IN HER<br>INDIVIDUAL CAPACITY | |

## RULING

Before the Court is a *Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Rule 12(b)(6)*[1] filed by Defendants, Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish, Sid J. Gautreaux, III, in his individual capacity, and Crystal Quiett, in her individual capacity as Commander of East Baton Rouge Parish Sheriff's Office Communications Division. Plaintiffs, Alonzo Coleman and Diane Coleman, have filed a *Response*[2] to Defendants' *Motion* to which Defendants have filed a *Reply*.[3] For the following reasons, Defendants' *Motion* shall be granted.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On June 8, 2012, the Plaintiffs' son, Rouche' Sherrod Coleman, Sr. (hereinafter "Roddy"), and their daughter-in-law, Kesia Coleman, were found dead from gunshot

---
[1] Rec. Doc. 8.
[2] Rec. Doc. 11.
[3] Rec. Doc. 12.
DM No. 17024

1

wounds. Kesia's eleven year old son, Roddy's stepson, was also found wounded at the scene. Plaintiffs' grandson, Logan Coleman, the child of Roddy and Kesia, was not at home during the shootings.

Ultimately, the East Baton Rouge Parish Sheriff's Office (hereinafter "EBRPSO") notified the Plaintiffs that their son, Roddy, had "attempted murder, committed murder, and then shot himself."[4] Unconvinced by the EBRPSO's conclusion, the following spring, the Plaintiffs began their own investigation into their son's death, which involved submitting several public records requests to the EBRPSO; notably, the first such request was made on March 24, 2013.[5] In response to their public records requests, Plaintiffs contend that, on April 23, 2013, they were charged by and paid $2,103.49 to the EBRPSO for crime scene photographs.[6] Five days later, Plaintiffs claim to have requested additional records related to Roddy's death, including a copy of the 911 tape recording Kesia made immediately preceding her death.[7] After receiving a copy of the 911 tape, which Communication Director Quiett had indicated was complete, Plaintiffs submit that a private audio analysis company independently reviewed the tape and concluded that it had been altered.[8]

On March 31, 2014, Plaintiffs filed the pending lawsuit against the EBRPSO, Sheriff Gautreux, in his official and individual capacities, and Commander Quiett, in her individual capacity, complaining that "Defendants are concealing—through excessive pricing for investigation records and altered tape recordings—the fact that a third party

---

[4] Rec. Doc. 1, p. 4, ¶9.
[5] Rec. Doc. 1, p. 3, ¶8.
[6] Plaintiffs alleged that they paid the lump sum in three separate money orders. Rec. Doc. 1, p. 3, ¶9.
[7] Rec. Doc. 1, p. 4, ¶10.
[8] Rec. Doc. 1, p. 5, ¶13. ("Plaintiffs then provided the tape of Kesia's call to 911 and a transcript to a private audio analysis company that reported, on May 13, 2013, that the recording ends abruptly and contains a previously-unheard statement by an unidentified person stating he recognizes a third party in the house.").

killed Roddy, as well as concealing the killer's identity."[9] According to Plaintiffs, it is the policy of the EBRPSO and Sheriff Gautreaux to unconstitutionally apply Louisiana's Public Records Act ("LPRA"), La. R.S. §44:32(C)(1)(a)[10], in violation of the Fourteenth Amendment by charging unreasonable fees to persons, like themselves, who are African American.[11] Plaintiffs contend that, on April 23, 2013, they were charged by the EBRPSO an "unreasonable fee" in violation of the LPRA for copies of a "few crime scene photos, in contrast to the fees customarily charged to similarly situated persons who are not black."[12] Plaintiffs have asserted their Fourteenth Amendment disparate treatment allegation against both the EBRPSO and Sheriff Gautreaux, in his official and individual capacities.

Plaintiffs also raise 42 U.S.C. § 1983 individual capacity claims against Sheriff Gautreaux and Commander Quiett for "wrongfully interfering with" their First and Fourteenth Amendment substantive constitutional rights of access to the courts, and equal protection under the law to assert various tort claims on behalf of their grandson.[13] Plaintiffs further allege 42 U.S.C. § 1985(2) conspiracy claims against Commander Quiett and Sheriff Gautreaux in their individual capacities arising out of

---

[9] Rec. Doc. 1, p. 6, ¶15.
[10] La. Rev. Stat. Ann. §44:32(C)(1)(a) states: "For all public records, except public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to persons so requesting. The custodian may establish and collect reasonable fees for making copies of public records. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state.").
[11] In their *Response* to Defendants' *Motion to Dismiss*, Plaintiffs expressly stated that they were not making a federal complaint for access to state records; rather, their "complaint alleges that defendants injured them by failing to treat similarly situated persons alike." Rec. Doc. 11, p. 3.
[12] Plaintiffs maintain that they ultimately paid this fee only because they were under duress. Rec. Doc. 1, p. 7, ¶8.
[13] Plaintiffs contend that they were entitled to bring a survival claim pursuant to La. C.C. art. 2315.1 and a wrongful death claim pursuant to La. C.C. art. 2315.2 on behalf of their grandson. Rec. Doc. 1, p. 8, ¶20.
DM No. 17024

3

Quiett's certification of the incomplete 911 tape recording as being "complete", and Gautreaux's knowledge thereof and failure to take preventative action.[14]

Plaintiffs also seek to invoke the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a), over their state law claims arising under the LPRA, La. R.S. 44:31(A).[15]

In their *Motion*, Defendants seek dismissal of Plaintiffs' claims on two grounds. First, Defendants contend that Plaintiffs have no right of action under the LPRA because they were not the requestors of the public records at issue. In the alternative, Defendants argue that Plaintiffs have failed to state viable 42 U.S.C. § 1983 and § 1985(2) claims upon which relief can be granted.

## II.  LAW

### A.  Rule 12(b)(6) Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16] However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."[17] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[18] Rather, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible

---

[14] Rec. Doc. 1, p. 8, ¶22.
[15] Rec. Doc. 1, p. 2, ¶2.
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)).
[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, at 555 (2007) (hereinafter "*Twombly*").
[18] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tx. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

on its face.'"[19] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[20] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] Furthermore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22] On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[23]

### B. 42 U.S.C. § 1983 Claims

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[24] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law."[25] As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution—not for violations of duties of care arising

---

[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (5th Cir. 2007)(quoting *Twombly,* 550 U.S. at 570).
[20] *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).
[21] *Id.*
[22] *Twombly*, 550 U.S., at 555 (internal citations and brackets omitted).
[23] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)(quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).
[24] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
[25] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D.La. 1998). *See also*, *Elphage v. Gautreaux*, 2013 WL 4721364, *5 (M.D. La. Sept. 3, 2013).

DM No. 17024

out of tort law.[26]  As to the second element, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[27]

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[28] Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. However, to be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law. In contrast, a state actor may have Section 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law.

## III. ANALYSIS

### A. No Right of Action

Defendants argue that because Plaintiffs' legal counsel requested the public records at issue, the Plaintiffs have no federal or state right of action pertaining to the public records request. Louisiana courts have explained that under the LPRA, "[o]nly the person who requests to inspect or copy a public record and is denied that right belongs to the class of persons to whom the law grants the cause of action."[29] While the Court recognizes that the correspondence attached to Plaintiffs' *Complaint* reflects several public records requests made by Plaintiffs' counsel, there is no such evidence showing that the initial March 24, 2013 public records request was made by anyone but

---

[26] *Griffith v. Johnston,* 899 F.2d 1427, 1436 (5th Cir. 1990).
[27] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).
[28] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 484 (5th Cir. 2000).
[29] *Vourvoulias v. Movassaghi*, 2004-0262 (La.App. 1 Cir. 2/11/05), 906 So.2d 461, 465.

the Plaintiffs.  Plaintiffs specifically allege that "[o]n March 24, 2013, [they] requested from [the] East Baton Rouge Parish Sheriff's Office all records relating to the death of their son."[30]  Therefore, the Court, construing the well-plead facts in a light most favorable to the Plaintiffs as it must on a motion to dismiss, finds that Plaintiffs belong to the class of persons to whom the LPRA grants a right of action.  Therefore, the Court shall consider Defendants' alternative arguments in support of dismissal.

### B.  Official Capacity Claims Against Sheriff Gautreaux and the EBRPSO

As an initial matter, the Court finds that Plaintiffs' official capacity claims against the EBRPSO must be dismissed, because the EBRPSO itself is not a separate legal entity that is capable of being sued.[31]  It is well-established that "[a]n official capacity suit is the equivalent of a suit against the entity of which the officer is an agent."[32]  Accordingly, Plaintiffs' official capacity claims against Sheriff Gautreaux are properly viewed as claims against the EBRPSO.

Defendant Sheriff Gautreaux contends that Plaintiffs have not properly stated a claim against him in his official capacity.  For the following reasons, the Court finds that Defendant Gautreaux is correct.

In determining whether a public official such as Sheriff Gautreaux is liable in his official capacity, "the Court looks to the jurisprudence discussing whether a municipality

---

[30] Rec. Doc. 1, p. 3, ¶8.
[31] "Under Rule 17(b), Federal Rules of Civil Procedure, the capacity to sue or be sued must be determined by the law of the state in which the district court is held.  Under Louisiana law a parish sheriff, whether in his individual or official capacity, is the proper party defendant.  It is also well settled under Louisiana law that a sheriff's department or office . . . is not a separate legal entity capable of being sued." *Damond v. E.B.R. Sheriff's Office*, 2012 WL 5959988, *1 (M.D.La. Oct. 31, 2012); see also, *Weatherton v. America's Most Wanted*, 2010 WL 4668965, *2 (M.D.La. Sept. 27, 2010)("Under Louisiana law a parish sheriff is the proper party-defendant to respond on behalf of the Sheriff's Office. It is well-settled under Louisiana law that a Sheriff's Office is not a legal entity capable of being sued.").
[32] *Hills v. Stevens*, 2012 WL 3779138, *3 (M.D.La. Aug. 31, 2012) (citing *Kentucky v. Graham*, 473 U.S.159, 165-66 (1985)).
DM No. 17024

or local government entity is liable under section 1983."[33] Although municipalities cannot be held liable in a Section 1983 action under the theory of *respondeat superior*, they may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[34] Municipal liability under 42 U.S.C. § 1983 requires proof of the following three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[35]

The Court finds that, as a matter of law, the first element has been satisfactorily pled considering Defendant Sheriff Gautreaux is deemed to be a final policymaker for the EBRPSO.[36] However, the second element necessary for municipal liability—an official policy—presents an insurmountable hurdle for Plaintiffs.

To establish liability on the part of Sheriff Gautreaux, Plaintiffs bear the burden of alleging a policy or custom of Sheriff Gautreaux or the EBRPSO that caused an alleged constitutional deprivation. "An official policy may be either a written ordinance or regulation or 'a persistent, widespread practice of city officials or employees that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy."[37] "Allegations of an

---

[33] *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196, *3 (E.D.La. May 14, 2009)(citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999)).
[34] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978) (hereafter *Monell*).
[35] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(citing *Monell*, 436 U.S. at 694).
[36] *Elphage v. Gautreaux*, 2013 WL 4721364, *16 (M.D.La. Sept. 3, 2013)(hereafter "*Elphage*")(ref'g to *Craig v. St. Martin Parish Sheriff*, 861 F.Supp. 1290, 1301 (W.D.La. 1994); La. Const. Art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish.")).
[37] *Yates v. Unidentified Parties*, 73 Fed.Appx. 19, at *20 (5th Cir. July 28, 2003)(unpublished)(quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).
DM No. 17024

8

isolated incident are not sufficient to show the existence of a custom or policy."[38] Here, the Court finds that Plaintiffs have failed to allege any factual support or allegations of a policy or custom of Sheriff Gautreaux or the EBRPSO, or that such policy was a "moving force" behind Plaintiffs' complaints of disparate treatment, so as to make their claims for relief plausible. Rather, the Court finds that Plaintiffs' allegations are conclusory in nature and amount to no more than an isolated incident, which is insufficient to trigger liability on Sheriff Gautreaux's part. Specifically, Plaintiffs' contention that they were charged more for their copies of public records on April 23, 2013, solely because of their race, without any other factual support, is an unsubstantiated conclusion and non-indicative of any policy depriving Plaintiffs of any constitutional rights. Therefore, based on the applicable jurisprudence, the Court will dismiss the Section 1983 claims against Sheriff Gautreaux in his official capacity for failure to state a claim.

### C. 42 U.S.C. § 1983 Individual Capacity Claims Against Sheriff Gautreaux

Plaintiffs have also asserted a claim against Defendant Sheriff Gautreaux in his individual capacity for applying the LPRA in a disparate manner because of Plaintiffs' race in violation of the Fourteenth Amendment, and for wrongful interference with Plaintiffs' First and Fourteenth Amendment rights of access to the courts and equal protection of the laws to bring tort claims on behalf of their grandson. The Court finds that Plaintiffs have failed to state a claim against him in his individual capacity.

---

[38] *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)(quoting *Rodriguez v. Avita,* 871 F.2d 552 (5th Cir.1989), *cert. denied* 493 U.S. 854 (1989); *Palmer v. City of San Antonio,* 810 F.2d 514 (5th Cir.1987).
DM No. 17024

9

Sheriff Gautreaux, a supervisory official, may only be held liable under Section 1983 if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."[39] "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates."[40] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[41] Mere negligence does not rise to the level of deliberate indifference.[42]

Here, Plaintiffs' *Complaint* is devoid of any factual allegations of Sheriff Gautreaux's personal involvement in any of the alleged First and Fourteenth Amendment constitutional violations. Plaintiffs have also failed to offer any factual allegations that identify the unconstitutional polices that caused their alleged injuries. Instead, Plaintiffs offer the conclusory allegation that "Sheriff Gautreaux ratified defendants' unlawful policies and conduct, by doing nothing despite knowing of the unlawful policies and conduct."[43] However, as previously discussed, such conclusory allegations are insufficient to state a claim.

To the extent Plaintiffs have attempted to establish Gautreaux's liability for constitutional violations committed by his subordinate employee, Defendant

---

[39] *Gates v. Texas Dept. of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)(quoting *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996)(hereinafter "*Gates*")).
[40] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)(quoting *Gates*, 537 F.3d at 435) (internal quotation marks and citation omitted, alterations and emphasis in original)).
[41] *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).
[42] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)("Deliberate indifference is more than mere negligence" (quoting *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)).
[43] Rec. Doc. 1, p. 9, ¶25.
DM No. 17024

Commander Quiett, Plaintiffs have failed to assert any factual allegations showing that Gautreaux acted with deliberate indifference to the Plaintiffs' constitutional rights. Instead, Plaintiffs offer only conclusory allegations that Gautreaux had "knowledge of the wrong to be done by Captain Quiett" and had the "power to prevent or aid in preventing commission of the same and neglect[ed] to do so."[44] Such "threadbare recitals" of the necessary elements to state a cause of action for supervisor liability under 42 U.S.C. § Section 1983, supported solely by conclusory statements, will not defeat a motion to dismiss. Accordingly, Plaintiffs' claims against Sheriff Gautreaux in his individual capacity shall be dismissed.

### D. 42 U.S.C. § 1983 Individual Capacity Claims Against Commander Quiett

Commander Quiett has asserted the qualified immunity defense in response to Plaintiffs' allegations that she wrongfully interfered with Plaintiffs' First and Fourteenth Amendment rights of access to the courts and equal protection of the laws to bring tort claims on behalf of their grandson.

"The qualified immunity defense entitles a defendant to avoid the 'burdens of litigation' as well as liability."[45] Qualified immunity protects an official acting under color of state law in their individual capacity "from liability of civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[46] "To overcome qualified immunity at the pleading stage, a plaintiff's complaint must include 'sufficient factual matter, accepted as

---

[44] Rec. Doc. 1, p. 8, ¶22.
[45] *Elphage*, 2013 WL 4721364, *5, citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)(quoting *Mitchell v. Forsythe*, 472 U.S. 511, 530 (1985)).
[46] *Batiste v. Theriot*, 458 Fed.Appx. 351, 354 (5th Cir. 2012)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
DM No. 17024

true, to state a claim to relief that is plausible on its face.'"[47] It is well-established within the Fifth Circuit that "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[48] "To satisfy that burden on a motion to dismiss, the plaintiff must allege facts which show that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable."[49]

Plaintiffs have failed to address the issue of qualified immunity. After reviewing the *Complaint*, the Court finds that, while Plaintiffs have alleged that on May 3, 2013 Commander Quiett stated that the 911 tape was complete, such a conclusory statement alone without more does not show that Quiett violated Plaintiffs' constitutional rights of access to the courts and equal protection under the law. On this basis alone, the Plaintiffs' claims against Quiett should be dismissed.

Dismissal is further warranted by Quiett's contention that, considering she did not become the Communications Commander until October 15, 2013, she could not have had personal or direct involvement in the alleged constitutional deprivations which occurred on May 3, 2013. While Plaintiffs request the opportunity to amend their *Complaint* to replace Quiett's name with "First-Name Unknown, Last-Name Unknown," allowing such an amendment would prove futile, because it would not rectify the

---

[47] *Day v. Louisiana*, 2013 WL 3894025, at *2 (W.D.La. July 25, 2013)(quoting *White v. Callender*, 2011 WL 6263256, report and recommendation adopted, 2011 WL 6288030 (N.D.Tex. Dec. 14, 2011) (quoting *Twombly*, 550 U.S. at 570)).

[48] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc)). *See also*, *Alexander v. Brookhaven School Dist.*, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009)(quoting *McClendon* 305 F. 3d at 322 in support of its reasoning that plaintiff had failed to meet her burden of demonstrating the inapplicability of the qualified immunity defense, "having offered only a cursory argument embedded within her response to [Defendant's] motion")).

[49] *Day v. Louisiana*, 2013 WL 3894025, at *3 (W.D.La. July 25, 2013)(quoting *White v. Callender*, 2011 WL 6263256, report and recommendation adopted, 2011 WL 6288030 (N.D.Tex. Dec. 14, 2011) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009))).

conclusory nature of Plaintiffs' allegations so as to make their claims any more plausible. Accordingly, Plaintiffs 42 U.S.C. § 1983 individual capacity claims against Defendant Quiett shall be dismissed on the basis of qualified immunity.

### E. 42 U.S.C. § 1985(2) Claim

Defendants contend that Plaintiffs have failed to state a viable 42 U.S.C. § 1985(2) conspiracy claim against them. Recently, the district court for the Northern District of Texas explained how the Fifth Circuit and the Supreme Court have interpreted 42 U.S.C. § 1985(2):

> The first clause of § 1985(2) "prohibits conspiracies to deter witnesses from attending court or testifying, punishing witnesses who have so attended or testified, or injure jurors." *Bryant v. Military Dep't of Miss.,* 597 F.3d 678, 687 n. 6 (5th Cir.2010). The clause has been read as protecting any party, witness, or juror from intimidation regardless of any racial animus on the part of the defendant. *Montoya,* 614 F.3d at 149 (citing *Kush v. Rutledge,* 460 U.S. 719, 723–27, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The second clause of § 1985(2) "prohibits conspiracies to deny any citizen equal protection of the laws or injure a citizen for his efforts to ensure the rights of others to equal protection." *Bryant,* 597 F.3d at 687. Since the equal protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second part of § 1985(2). *See Daigle v. Gulf State Utils. Co., Local Union No. 2286,* 794 F.2d 974, 979 (5th Cir.1986) (citing *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 346 (5th Cir.1981) (en banc), cert. denied, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)).[50]

In this case, Plaintiffs rely on the second clause of Section 1985(2).

Accepting the well-pled facts as true, the Court finds that Plaintiffs have failed to state a viable claim under 42 U.S.C. § 1985(2). Plaintiffs have failed to allege any facts showing that Sheriff Gautreaux and Commander Quiett conspired together, or that they were motivated by a race or class-based animus. Plaintiffs have offered nothing but conclusory allegations that Sheriff Gautreaux knew and failed to prevent Commander

---

[50] *Payne v. Universal Recovery, Inc.*, 2011 WL 7415414, *8 (N.D.Tx. Dec. 7, 2011).
DM No. 17024

Quiett from certifying an incomplete 911 tape. The Court finds that such allegations are devoid of any factual content from which the Court would be able to draw the reasonable inference that these Defendants are liable under 1985(2). Therefore, Plaintiffs 42 U.S.C. § 1985(2) claim is also subject to dismissal for failure to state a claim.

### F. State Law Claims Arising Under the LPRA

Plaintiffs also seek to invoke the Court's supplemental jurisdiction over their remaining state law claims arising under the LPRA. 28 U.S.C. § 1367 provides that [t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."[51] "While the Court has wide discretion in determining whether to exercise supplemental jurisdiction, the 'general rule' is to decline to exercise such jurisdiction when all federal claims have been eliminated prior to trial."[52] Because the Court has dismissed all of the claims over which it had original jurisdiction, the Court shall decline the exercise of supplemental jurisdiction over the Plaintiffs' remaining state law claims.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the *Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Rule 12(b)(6)*[53] filed on behalf of Defendants, East Baton Rouge Parish Sheriff's Office, Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish, Sid J. Gautreaux, III, in his

---

[51] 28 U.S.C. § 1367(c)(3).
[52] *Gopalam v. Smith*, 2014 WL 518199, *9 (M.D.La. Feb. 6, 2014)(citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002)(quoting *Batiste v. Island Records, Inc.*, 179 F.3d 217, 226-27)).
[53] Rec. Doc. 8.
DM No. 17024

individual capacity, and Crystal Quiett, Commander of East Baton Rouge Parish Sheriff's Office Communications Division in her individual capacity, is hereby GRANTED. Plaintiffs' state law claims arising under the Louisiana Public Records Act are hereby DISMISSED WITHOUT PREJUDICE.

Signed in Baton Rouge, Louisiana, on <u>October 28, 2014</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**